IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| The Regents of the University of California, a California Constitutional Corporation, on Behalf of its UCLA Health System, <br><br>  Plaintiff, <br><br> v. <br><br> Health Care Service Corporation, a Mutual Legal Reserve Co. d.b.a. Blue Cross and Blue Shield of Texas; and Does 1 through 25, Inclusive, <br><br>  Defendants. | Case No. 22 C 6960 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Regents of the University of California, a California Constitutional Corporation, on Behalf of its UCLA Health System ("UCLA Health") sued Defendants Health Care Service Corporation, a Mutual Legal Reserve Co. d.b.a. Blue Cross and Blue Shield of Texas ("HCSC") and Does 1 through 25, Inclusive, in state court for breach of contract and quantum meruit. HCSC removed the case to federal court on the basis that UCLA Health's state law claims are preempted by federal law. Currently before the Court is UCLA Health's motion to remand the case to state court. For the reasons stated below, the motion to remand [13] is granted, and this action is remanded to the Circuit Court of Cook County, Illinois.

## BACKGROUND

UCLA Health is a healthcare provider operating in Los Angeles, California. (Compl. ¶ 3, Dkt. 1-1). HCSC is an insurance company based in Chicago, Illinois. (*Id.* ¶ 5). Does 1 through 25 are unknown persons responsible for the acts of HCSC. (*Id.* ¶¶ 6, 7, 9).

1

UCLA Health is party to a written contract with Anthem Blue Cross d.b.a. Blue Cross of California and Affiliates ("Anthem"), which is not a party to this action. (*Id.* ¶ 12). Under their contract, UCLA Health is obligated to provide medical treatment to individuals who have health insurance plans with companies that are members of the national Blue Cross Blue Shield Association. (*Id.*) HCSC is a member of that association. (*Id.*) The contract also bound UCLA Health to accept payment from member companies such as HCSC at discounted rates listed in the contract. (*Id.* ¶ 13). HCSC issued "Blue Card" program identification cards to individuals with HCSC health insurance plans, which, when presented to UCLA Health at admission, signaled to UCLA Health that it must provide medical treatment at the discounted rates under the UCLA Health-Anthem contract. (*Id.* ¶ 27).

Between August 9, 2018, and July 29, 2019, UCLA Health provided medical treatment to three individuals with HCSC health insurance plans. (*Id.* ¶¶ 14-15). Each individual presented a Blue Card to UCLA Health or otherwise identified themselves as individuals with HCSC plans. (*Id.* ¶ 29). Prior to rendering services, UCLA Health sought and received authorization from HCSC to admit the patients and provide medical treatment. (*Id.* ¶¶ 16, 34). The usual and customary charges for the treatment UCLA Health provided to the patients would be $133,685.57, but total charges due at the discounted rates provided in its contract with Anthem are $78,737.20. (*Id.* ¶¶ 19, 21). Although UCLA Health submitted bills[1] to HCSC for payment, HCSC has not paid anything. (*Id.* ¶¶ 20-21). For at least one of the patients, HCSC declined the payment request

---

[1] According to HCSC, the claim received for at least one of the patients contained a "Y" next to "Assignment of Benefits" which reflects that UCLA Health received an assignment of benefits from the patient. (Notice of Removal, Ex. 4 (Decl. of Jo McMillin) ¶¶ 10, 13, 16, Dkt. 1-4). As discussed *infra* at 9, UCLA Health contests the validity of that assignment because HCSC has not provided evidence that it was delivered to HCSC with the claim for benefits, as required under the terms of the patient's health insurance plan. (Pl.'s Supp. Br. at 9-10, Dkt. 20).

because the treatment exceeded the maximum annual benefits available under the patient's health insurance plan. (Notice of Removal, Ex. 4 (Decl. of Jo McMillin) ¶ 17, Dkt. 1-4).

After UCLA Health filed a complaint against HCSC in state court for breach of implied-in-fact contract and quantum meruit, HCSC removed the matter to federal court. According to HCSC, the Court has federal question jurisdiction because UCLA Health's claims are preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. In response, UCLA Health filed a motion to remand the case to state court. After the parties briefed the motion, the previously assigned district judge[2] heard oral arguments in March 2023, and then granted them leave to file supplemental briefs on an issue raised for the first time at the hearing. Having reviewed the relevant filings, statutory text, and case law, the Court is ready to rule.

## LEGAL STANDARD

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Referred to as "federal question" jurisdiction, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). When ruling on a motion to remand, the court "may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been

---

[2] This case was reassigned to the calendar of Judge LaShonda A. Hunt on June 2, 2023 [23].

3

submitted on the issue[.]" *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

Generally, the determination of whether federal question jurisdiction exists "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This is so even if federal law forms the basis of a defense to the complaint. *Id.* There is an exception, however, when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "ERISA is one of these statutes." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

## DISCUSSION

Section 514 of ERISA provides that the statute's civil enforcement provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The aim of this expansive preemption provision is to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Davila*, 542 U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523 (1981)). In turn, Section 502 of ERISA sets forth "a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Davila*, 542 U.S. at 208 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies

4

under state law that Congress rejected in ERISA." *Davila*, 542 U.S. at 208-09 (quoting *Pilot*, 481 U.S. at 54). For this reason, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209.

In *Davila*, the Supreme Court articulated a two-prong test for determining whether ERISA completely preempts a state law claim: (1) the plaintiff must have been able, at some point in time, to have brought its claim under Section 502(a)(1)(B) of ERISA; and (2) there must be no legal duty independent of ERISA or the plan terms implicated by a defendant's actions. *Id.* at 210. Section 502(a)(1)(B) allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

According to UCLA Health, neither prong is satisfied, and its complaint must therefore be remanded to state court for lack of federal subject matter jurisdiction. Specifically, UCLA Health argues it could not have brought a claim under Section 502(a)(1)(B) because it is not a "participant or beneficiary" in an ERISA plan, and the assignment of benefits for at least one of the patients is both (a) limited to benefits, not rights, such as the right to sue for payment, and (b) invalid because HCSC has not produced a written assignment delivered with the claim, as required by the anti-assignment clause contained in the patient's health insurance plan. With respect to the second prong of the analysis, UCLA Health contends its claims are based on legal duties that arose from the UCLA Health-Anthem contract, HCSC's Blue Card program, preauthorization of treatment, and the parties' course of dealing, all of which are independent from duties arising under ERISA. Under this theory, UCLA Health insists that it brings state law claims independently as a healthcare provider, not as an assignee of benefits under an ERISA plan.

5

HCSC maintains removal was proper, the Court has jurisdiction because ERISA preempts UCLA Health's claims under *Davila*; thus, the motion for remand should be denied. As to UCLA Health's ability to bring a claim as a "participant or beneficiary" under Section 502(a)(1)(B), HCSC argues that an assignment of benefits necessarily includes the ability to enforce the right to payment and the patient's plan permits assignment to a healthcare provider such as UCLA Health. On the second prong of the analysis, HCSC insists UCLA Health's claims are in substance for denial of benefits under the patients' ERISA plans and do not implicate any independent legal duty. Essentially, HCSC's argument is that UCLA Health's claims, however characterized, ultimately flow from the patients' ERISA plans, and cannot be resolved without analyzing proof of benefits covered under the plans.

After the Supreme Court's *Davila* decision, the Seventh Circuit considered whether ERISA preempted state law claims in a case with facts nearly identical to this one. *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594 (7th Cir. 2008). In that case, an individual sought medical treatment from a healthcare provider, and the provider obtained verification of coverage for the relevant treatment from the insurer before providing any services. *Id.* at 596. The provider subsequently submitted claims for payment to the insurer pursuant to an assignment of benefits, but the plan denied coverage and declined to pay on the basis that the individuals' coverage had lapsed due to non-payment of premiums. *Id.* The provider then sued the insurer in state court for negligent misrepresentation and estoppel under state law based on the preauthorization of coverage. *Id.* After the insurer removed the matter from state court, the district judge denied a motion to remand on the basis that the claims were completely preempted by ERISA and ultimately dismissed the action. *Id.*

6

On appeal, the Seventh Circuit reversed. Applying the test from *Davila*, the Seventh Circuit held the first prong was not satisfied because the provider was not bringing claims under an assignment of benefits, but instead entirely in its own right. *Id.* at 597. This was so because the claims arose, "not from the plan or its terms, but from the alleged oral representations made by [the insurance plan] to [the healthcare provider]." *Id.* Notably, although the provider *could* have stepped into the patient's shoes under the assignment of benefits and contested the insurer's decision to deny coverage, it did not. *Id.* at 598. Instead, the provider brought its "own independent claims, and [those] claims [were] simply not claims to 'enforce the rights under the terms of the plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)). As such, "the claims [were] not preempted because they could not have been brought under ERISA § 502(a)(1)(B)." *Id.* Turning to the second prong of the analysis, the Seventh Circuit examined the duties that gave rise to state law claims at issue and concluded that "relevant legal duties, logically implicated by these facts, are entirely independent from ERISA and any plan terms." *Id.* at 599.

Several other appellate courts have reached similar results. *See id.* at 599-600 (citing *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604-07 (8th Cir. 1996); *Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995); *Hospice of Metro Denver v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752 (10th Cir. 1991); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243-50 (5th Cir. 1990)). And at least one other court of appeals has reached the same conclusion where a provider brought state law claims for breach of implied-in-fact contract and quantum meruit, as is the case here. *See Emergency Grp. of Ariz. Prof. Corp. v. United Healthcare, Inc.*, 838 F. App'x 299, 300 (9th Cir. 2021). There, a group of out-of-network emergency medical providers' claims were based on legal duties arising under an implied-in-fact contract based on a course of dealing between the parties. *Id.* The Ninth Circuit held that a

7

provider's claims were not preempted by ERISA because "alleged legal duties 'would exist whether or not an ERISA plan existed' and thus are independent from the legal obligations imposed by the ERISA plans." *Id.* (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)).

Addressing similar situations, lower courts in this district have reached differing results. In *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, a group of health care providers and physicians sued an insurer under a Texas statute that allows out of network emergency care providers to seek payment at the usual and customary rate, or a rate agreed to by the insurer and provider. 41 F. Supp. 3d 695, 697 (N.D. Ill. 2014). That court found the first *Davila* prong was satisfied because the provider had previously submitted claims to the insurer pursuant to assignments of benefits from patients. *Id.* at 699. On the second prong, the court concluded that "the claim at issue [did] not involve duties completely independent of an ERISA plan[,]" because there was no dispute over the rate of payment, in which case ERISA preemption does not apply, but, "[r]ather, the parties dispute the *right* to payment, or whether such claims are payable, as evidenced by [the insurer's] denial of payments under the relevant ERISA plan." *Id.* at 700. In reaching its conclusion, the *Emerus* court relied on a Fifth Circuit case that considered the same Texas statute and held the state statutory remedy "only overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is 'payable'—whether there has been a denial of benefits because there is a lack of coverage." *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 532 (5th Cir. 2009).

After *Emerus*, several subsequent decisions have focused on the distinction between a claim that disputes the rate of payment and a claim that asserts a right to payment under an ERISA plan. *See Affiliated Dialysis of Joliet, LLC v. Health Care Serv. Corp.*, No. 23 C 15086, 2024 WL

8

1195607 (N.D. Ill. Mar. 20, 2024) (Jenkins, J.) (remanding case to state court because provider's claims against insurer sought the difference between out-of-network rates and rates set forth under a prior agreement between the parties—not the right to payment under patients' plans); *Stanford Health Care v. Health Care Serv. Corp.*, No. 23 C 4744, 2023 WL 7182990 (N.D. Ill. Nov. 1, 2023) (Gottschall, J.) (remanding action because provider's claims against insurer disputed the rate of payment under the provider's contract with a third-party, not the right to payment under a plan); *John Muir Health v. Health Care Serv. Corp.*, No. 22 C 6963, 2023 WL 4707430, at *4 (N.D. Ill. July 24, 2023) (Seeger, J.) (holding ERISA preempted provider's claims because "whether [the provider] is entitled to damages depends on what benefits and payments are owed under the relevant ERISA plans."); *see also Advanced Physicians, S.C. v. Nat'l Football League*, No. 19 CV 2959, 2019 WL 5085335, at *2 (N.D. Ill. Oct. 10, 2019) (Shah, J.) (denying motion to remand where several elements of the provider's state law claims required interpretation of the patient's ERISA plans).

Applying the principles articulated in these cases, the Court concludes that UCLA Health's claims against HCSC are not completely preempted by ERISA. Consequently, this action should be remanded to state court. The first prong of the *Davila* analysis is not satisfied because, as explained *supra* at 5, UCLA Health's claims here are based on either an alleged implied agreement between the parties or the value received by HCSC due to UCLA Health providing services. UCLA Health is not, as HCSC suggests, contesting HCSC's denial of coverage or seeking payment or benefits under the patients' plans. Thus, UCLA Health "is not and could not be 'standing in [the patients'] shoes' or asserting [their] rights." *Franciscan Skemp*, 538 F.3d at 598.[3]

---

[3] If UCLA Health were contesting HCSC's denial of coverage or seeking payment under the plans, it appears that it would be able to do so pursuant to the assignments of benefits. *See Emerus*, 41 F. Supp. 3d at 698 ("Although standing under ERISA is generally limited to 'a participant or beneficiary,' a medical care provider can enjoy

9

In the second part of the *Davila* analysis, the Court must determine whether there is an "independent legal duty that is implicated by a defendant's actions[.]" *Davila*, 542 U.S. at 210. In making this determination, the Court must examine the complaint, the state law on which the claims are based, and relevant plans. *Id.* at 211. Essentially, the complaint alleges HCSC entered into an implied-in-fact contract with UCLA Health by issuing Blue Cards to plan participants, confirming patients' eligibility, and preauthorizing treatment. Under that implied agreement, HCSC would pay UCLA Health the discounted rates set forth in the UCLA Health-Anthem contract for medical treatment provided to patients with HCSC insurance plans, as HCSC had done for the preceding five years. Alternatively, the complaint alleges HCSC benefited from such conduct and therefore owes UCLA Health the value of the medical treatment provided.

Either way, the legal duties implicated by UCLA Health's state law claims for breach of implied-in-fact contract and quantum meruit arise from the parties' conduct. *See Kohlenbrener v. North Suburban Clinic, Ltd.*, 356 Ill. App. 3d 414, 419 (1st Dist. 2005) (listing elements of claim for breach of implied-in-fact contract); *Marcatante v. City of Chicago, Ill.*, 657 F.3d 433, 443 (7th Cir. 2011) (listing elements for quantum meruit). In sum, these duties arise from the alleged interactions between UCLA Health and HCSC and are independent from any duties that arise under the patients' ERISA plans. Indeed, UCLA Health does not contest HCSC's denial of coverage. Rather, UCLA Health "is bringing its own independent claims, and these claims are

---

derivative standing as an assignee of plan benefits.") (citation omitted); *see also Lutheran Gen. Hosp. v. Printing Indus.*, 24 F. Supp. 2d 846, 849 (N.D. Ill. 1998) ("as an assignee, a medical service provider has standing to maintain an action under ERISA"). But that is not the case here, so the Court need not reach that issue.

Furthermore, although "[t]he parties devote considerable attention to the question of whether some, but not all, plans covering the various claims at issue here contain anti-assignment clauses that would prevent [UCLA] from bringing a claim under § 502(a)(1)(B) of ERISA[,] . . . [t]he court need not and does not address these arguments or the question of whether it would have supplemental jurisdiction over any claims not subject to removal due to an anti-assignment clause." *See Stanford*, 2023 WL 7182990, at *4 n. 2.

10

simply not claims to 'enforce the rights under the terms of the plan.'" *Franciscan Skemp*, 538 F.3d at 598 (quoting 29 U.S.C. § 1132(a)(1)(B)).

Although the conclusion reached here based on these particular facts does not fit squarely within the rate of payment versus right to payment analysis employed by other courts in this district, that does not mean it is incongruent. That framework traces its roots back to the Fifth Circuit *Lone Star* case, which distinguished between a rate of payment and a right to payment or coverage *under a benefit plan*. *See Lone Star*, 579 F.3d at 530 ("A claim that implicates the rate of payment set out in the Provider Agreement, rather than the right to payment *under the terms of the benefit plan* . . . is not preempted by ERISA.") (emphasis added) & at 532 (the state law claim "only overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is 'payable'—whether there has been a denial of benefits because there is a lack of coverage."). The decisions from this district that rely on that distinction either implicated a rate of payment (*Affiliated Dialysis* and *Standford*) or a right to payment *under a benefit plan* (*Emerus* and *John Muir*). This case does not. As discussed above, UCLA Health is not disputing the rate it is entitled to be paid or contesting any denial of coverage under the patients' plans. Instead, UCLA's complaint asserts a right to payment that arises from its contract with Anthem and the parties' conduct, *not a benefit plan*. Accordingly, the second prong of *Davila* is also unsatisfied.

This Court is mindful of the Seventh Circuit's warning that "[a]rtful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed in keeping the case in state court." *Franciscan Skemp*, 538 F.3d at 596. But, as discussed above, UCLA Health's claims here simply do not "relate to any employee benefit plan[.]" 29 U.S.C. § 1144. Therefore, ERISA's preemption provisions do not convert UCLA

11

Health's "state causes of action into federal ones for purposes of determining the propriety of removal." *Davila*, 542 U.S. at 209.

## CONCLUSION

For the reasons stated above, UCLA Health's motion to remand is granted, and this matter is remanded to the Circuit Court of Cook County, Illinois.

**DATED**: May 14, 2024  **ENTERED**:

LASHONDA A. HUNT
United States District Judge